**UNITED STATES of America, Appellee,**

v.

**Ronald L. HULSHOF, Appellant.**

**No. 93–3109 NISC.**

United States Court of Appeals,
Eighth Circuit.

Submitted Jan. 14, 1994.

Decided May 12, 1994.

Counsel who presented argument on behalf of the appellant was Donald Molstad of Sioux City, IA.

Counsel who presented argument on behalf of. the appellee was Willis A. Buell of Sioux City, IA.

Before McMILLIAN and MORRIS SHEPPARD ARNOLD, Circuit Judges, and STROM,* District Judge.

STROM, District Judge.

Ronald L. Hulshof was charged and pleaded guilty to one count of misapplying bank funds in violation of 18 U.S.C. § 656. After a sentencing hearing and pursuant to the applicable Sentencing Guidelines, the district court found a total offense level of 14, a criminal history category of I, and a sentencing range of 15 to 21 months.

Hulshof now appeals his sentence, arguing that the district court erred in calculating the "loss" used in determining his offense level and in determining that his actions in transferring certain funds from the bank account of his father, on which he was an authorized signer, to his own private account, constituted relevant conduct in determining defendant's offense level. For the following reasons, we affirm.

---

* The Honorable Lyle E. Strom, Chief Judge, District of Nebraska, sitting by designation.

## BACKGROUND

In Paragraph 7 of defendant's plea agreement (App. 5–6), the parties stipulated that at all relevant times Hulshof was a vice president of American State Bank in Sioux Center, Iowa; that between January 5, 1988, and April 29, 1988, Hulshof misapplied bank funds through a series of transactions whereby he improperly indebted the line of credit of a bank customer, Wilbur Sandbulte, in the amount of $471,764, and improperly credited that amount to the loan accounts of two other bank customers: $327,979 to his father Arnold's account and $143,785 to the account of bank customer James Van Beek.

Between March and April, 1988, Hulshof debited his father's account for the $327,979 which he had previously improperly credited. Hulshof was unable to return the $143,785 credited to Van Beek's account because Van Beek declared bankruptcy.[1]

In another series of transactions commencing in 1985 and continuing into 1988, Hulshof transferred $104,000 from Arnold's checking account to his own personal account. Although Hulshof appears to have had signature authority on his father's account, Hulshof transferred the money by either using a bank debit form to remove the money from his father's account and deposit it in his own account or he would simply keep cash from deposits entrusted to him by his father. When Arnold learned of these transfers, he made demand on the bank and the matter was settled by an agreement forgiving $100,-000 of Arnold's debt and giving Arnold a $30,000 interest-free loan.

At the sentencing hearing, the district court ruled that the amount of loss from the Sandbulte misapplications totaled $327,979, representing the amount transferred from Sandbulte's account to Arnold's. The court did not include the $152,481 transferred to Van Beek in determining the loss figure, and there has been no appeal of that ruling. Accordingly, it will not be discussed. The court further held that the $104,000 Hulshof removed from his father's account constituted relevant conduct under U.S.S.G.

---

1. This amount was later increased to $152,481, apparently to account for the addition of interest.

§ 1B1.3(a). The Court concluded that the $327,979 and $104,000 figures represented the "loss" under the guidelines for purposes of determining defendant's offense level. U.S.S.G. § 2B1.1(b)(1) (effective November 1, 1987). Hulshof's total offense level was calculated at 14.[2]

## DISCUSSION

Hulshof first argues that the district court erred when it included the $104,000 as relevant conduct. Hulshof also contends that the government failed to meet its burden in determining that the $327,979 was a loss for sentencing purposes. We address these objections in order.

### I. Relevant Conduct

■ The relevancy of conduct is a factual finding reversible only for clear error. *United States v. Morton,* 957 F.2d 577, 580 (8th Cir.1992); *United States v. Gooden,* 892 F.2d 725, 728 (8th Cir.1989). The district court made factual findings showing that Hulshof, up to and during the misapplications involving Sandbulte, Van Beek and his father, conducted a series of misleading withdrawals from his father's account for his personal use. He did this by falsifying records during the time that he was a vice president of the bank and in much the same manner that he used to falsify bank records involving his father's loan account. Defendant also represented to his father that funds were applied to his father's loan account, when in fact the money was improperly transferred to Hulshof's personal account.

The United States Sentencing Guidelines provide that conduct and circumstances relevant to the offense of conviction in part means acts that "(1) are part of the same course of conduct, or a common scheme or plan, as the offense of conviction, or (2) are relevant to the defendant's state of mind or motive in committing the offense of conviction." U.S.S.G. § 1B1.3(a). In the commentary, the Sentencing Commission noted that these criteria are "derived from two sources,

Rule 8(a) of the Federal Rules of Criminal Procedure, governing joinder of similar or related offenses, and Rule 404(b) of the Federal Rules of Evidence permitting admission of evidence of other crimes to establish motive, intent, plan, and common scheme."

Applying this criteria, the Court finds that the district court correctly concluded that these transactions were part of the relevant conduct of the defendant. Therefore, we find no error.

### II. Amount of Loss

Hulshof argues that the government did not meet its burden of proving the amount of loss and that the district court therefore erred in figuring the loss amount attributable to the Sandbulte transactions at $327,979.

■ The government bears the burden of proving disputed factors at sentencing by a preponderance of the evidence. *United States v. Hammer,* 3 F.3d 266, 272 (8th Cir. 1993). We review the findings of the district court under the clearly erroneous standard. *United States v. West,* 942 F.2d 528, 532 (8th Cir.1991); *United States v. Morton,* 957 F.2d 577, 580 (8th Cir.1992).

■ According to the evidence presented at the sentencing hearing, Hulshof misapplied these funds and improperly adjusted the loan accounts of his father, Mr. Van Beek, and the Sandbulte lines because he was concerned that his father's outstanding loan balance was not supported by his financial statements. Hulshof testified that he wanted to artificially improve his father's loan account balance so it would appear to be in better shape than it actually was. Hulshof justified his actions by stating that he commenced these misapplications during a period when the agricultural economy was depressed and many farmers were over-extended.

The evidence satisfies the Court that the actions of defendant placed the bank at risk of loss of $327,929. The commentary to the

---

2. The district court calculated the Offense Level as follows: Base Offense Level: 4; Specific Offense Characteristic: 9, with a 2 point upward adjustment for abuse of public trust and a 2 point upward adjustment for more than minimal planning; less a 3 point adjustment for acceptance of responsibility (Sen.Tr. pgs. *154, 167*).

guidelines provides that "loss" means the "value of property taken, damaged, or destroyed." U.S.S.G. § 2B1.1 (Commentary). Although the evidence developed at the sentencing hearing shows that the bank did not actually lose any money due to the Arnold–Sandbulte transactions (Sen.Tr. pgs. 19, 24, 27), this was largely because of the recovery of the farm economy in 1988, which enabled the defendant to reverse the entries which he had previously made to protect his father's loan account. As we have held, "the dollar value associated with defendant's conduct does not hinge upon actual loss," *United States v. Prendergast*, 979 F.2d 1289, 1292 (8th Cir.1992), and whether the loss was intended or whether the loss was paid back is irrelevant. *United States v. Redlin*, 983 F.2d 893, 896 (8th Cir.1993).

In view of this record, we cannot find that the district court was clearly erroneous in including the Arnold–Sandbulte transactions of $327,979 in the determination of the "loss" to be used in arriving at defendant's offense level. We therefore affirm the judgment of the district court.